**Bernard HALPERN and Shirley Halpern**

v.

**UNITED STATES of America.**

**Civ. A. No. 10448.**

United States District Court
N. D. Georgia,
Atlanta Division.

March 5, 1968.

Gershon, Ruden & Schwartz, Atlanta, Ga., for plaintiff.

Slaton Clemmons, Asst. U. S. Atty., Atlanta, Ga., for defendants.

EDENFIELD, Judge.

## ORDER

The facts in this action by a taxpayer seeking a refund of taxes paid are fully set forth in a stipulation by the parties. There being no conflict between the evidence and the stipulation, the latter is hereby incorporated in this order.

For convenience, however, the substance of the facts as they appear to the court may be briefly stated. At the outset of the transactions in question, plaintiff owned an equity in the Verbena property of $32,000 and had $14,000 in cash. Chennault owned an equity in the Wadley property of $15,000 and had $17,000 in cash. Kidd and Smith together had an equity in the Hollywood property worth $19,000. Bartlett had an equity in the Gordon property worth $77,000. At the end of the transactions, plaintiff's assets of $46,000 had been transmuted into the Wadley equity ($15,000), the Hollywood equity ($19,000), and $12,000 worth of equity in the Gordon property. Chennault's $32,000 worth of assets had been wholly transmuted into the Verbena equity; Kidd and Smith had $19,000 in cash; Bartlett had $12,000 in cash, and plaintiff's note for $65,000. (Plaintiff's mortgage on the Verbena property of $38,700 and Chennault's mortgage on the Wadley property of $25,800 had each been assumed by the new owners of the properties.)

The taxpayer contends that the series of transactions which brought about these changes in position was designed and executed so as to make the transaction a unitary one and thus a tax-free exchange (for Halpern) of like property within the scope of Internal Revenue Code of 1954 § 1031(a).[1] The Government, on the other hand, contends that the plaintiff exchanged his Verbena property solely for the Wadley property of Chennault plus a cash "boot" paid by Chennault, which the plaintiff promptly reinvested in the Hollywood and Gordon properties. If this latter contention is so, then plaintiff's profits from the Verbena-Wadley transfer are taxable under the provision of § 1031(b)[2] as an exchange not wholly in kind.

1. "(a) Nonrecognition of gain or loss from exchanges solely in kind.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment."

2. "(b) Gain from exchanges not solely in kind.—If an exchange would be within the provisions of subsection (a), of section 1035(a), of section 1036(a), or of section 1037(a), if it were not for the fact that the property received in exchange consists not only of property permitted by such provisions to be received

These profits are calculated as the decrease in mortgages payable by plaintiff ($13,000), plus the difference between the sum of the fair market value of the Wadley property ($40,000) and the cash received by plaintiff ($17,000), and plaintiff's basis in the Verbena property of $48,000, or a total difference of $9,-000. The gain realized by plaintiff is thus approximately $22,000 ($13,000 + $9,000), which when taxed at 50%, results in the $10,740.67 in dispute here.

Both sides have cited and distinguished numerous cases attempting to show that the facts in this case are or are not similar to those in some other case before some other court. These cases have been carefully studied, and it would appear that regardless of the details of the transactions involved (which inevitably vary from case to case), certain principles have been relatively consistently applied.

█ It is clear, for instance, that it is legally irrelevant that the taxpayer-plaintiff *intended* to devise a transaction which would bring him within the letter of the statute. Intent to avoid a tax is not determinative of no liability, just as a lack of intent cannot operate to create a liability if the taxpayer is otherwise entitled to favorable treatment. C. I. R. v. Duberstein, 363 U.S. 278, 286, 80 S. Ct. 1190, 4 L.Ed.2d 1218, 1225 (1960); Carlton v. United States, 385 F.2d 238 (5th Cir., 1966).

█ Equally irrelevant is plaintiff's contention that plaintiff signed the contracts to purchase the Hollywood and Gordon properties as some sort of accommodation to Chennault, and in accord with the agreement between plaintiff and Chennault executed on May 6,

1961. That agreement did not require and at no time in the course of the transaction did Chennault acquire any legal interest in either of the two properties in which the profits realized by the plaintiff from the original two-party exchange were subsequently invested. Chennault's only role in these transactions, even by the terms of the May 6 agreement, was to "arrange to secure the conveyance to Halpern by warranty deed of the parcels of [Gordon Road and Hollywood Road] property." The agreement provided further that the "conveyances to Halpern of the parcels [Wadley, Gordon and Hollywood] shall be in consideration of the conveyance to Chennault by Halpern of the [Verbena] property. * * *" There is no evidence that Chennault "arranged" the transfer of the Gordon and Hollywood properties[3] or that these clauses are anything more than a transparent self-serving attempt to create some apparent link between Chennault and the properties Halpern intended to acquire.

█ Two more of plaintiff's remaining contentions are likewise of no great weight. It is conceded by the Government that all of the real property involved in these transactions is of "like kind" as required by the statute. However, it is not enough that the property be of "like kind", as required by § 1031(a). There must be an *exchange* of like property. Similarly, it is not controlling that the Government has treated part of the Verbena-Wadley exchange as an exchange of like property within the ambit of § 1031(b). The question is whether the *Hollywood* and *Gordon* properties were *exchanged*, rather than merely purchased by plaintiff. Only if plaintiff assumes the only point in ques-

---

without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."

3. Indeed, this is belied by the plaintiff's own deposition, which states, "Now the

reason for me going out there [to the Gordon and Hollywood properties] instead of Chennault, now he's a colored fellow and he—and these two areas were predominantly white. And six years ago it was just not a very healthy thing for a colored person to go into a white area and buy property." This would suggest that Chennault was hardly in a position to "arrange" these transfers.

tion (whether the transaction was a single or severable one) does the Government's treatment of the Verbena-Wadley exchange have any significance.

▬ Therefore, the sole question remaining is really whether the transfer of the Hollywood and Gordon properties was an integral part of the Wadley-Verbena transfer or whether it was in fact a reinvestment of the profits resulting from the Wadley-Verbena transfer. Central to this question, in the court's view of the problem, is the fact that at no time in either the planning or execution of the transaction did Chennault ever acquire even an equitable title to the Hollywood or Gordon properties. Nor were the contracts with the owners of the Hollywood and Gordon properties, which were separately negotiated by the plaintiff, dependent in any way on the consummation of the transaction with Chennault. The facts show that the transaction with Chennault was not at all dependent on the Hollywood and Gordon transactions, although the agreement purports to make it so. When the owner of the Gordon property discovered she could not deliver a warranty deed on June 1, 1961, the transfer with Chennault was consummated regardless and the Gordon property was finally transferred to Halpern in a completely separate title closing on September 19, 1961. There is no indication that Chennault or the owner of the Hollywood property made their part in the transaction contingent in any way upon Halpern's being able to complete his deal with Mrs. Bartlett for the Gordon property. In all the cases relied on by plaintiff in which a third party's property was received by the plaintiff, the title to that property first passed through the second party who was the primary exchange partner. See Coastal Terminals, Inc. v. United States, 320 F.2d 333 (4th Cir., 1963); Alderson v. Comm'r. of Internal Reve-

nue, 317 F.2d 790 (9th Cir., 1963); J. H. Baird Publishing Co. v. Comm'r., 39 T.C. 608 (1962). In effect, the exchange in each of these cases was between two parties, one of whom had, in his own manner, previously acquired property which was to be subsequently exchanged with that of the taxpayer. Nor is plaintiff's situation comparable to the true three-party transaction described in Rev. Rul. 57–244, in which the participation of each party is essential to the contract and the failure of any one element of the exchange would cause the entire contract to be unenforceable. Cf., W. D. Haden Co. v. Comm'r., 165 F.2d 588[2] (5th Cir., 1948).[4] Rather than the triangular relationship envisioned in Rev. Rul. 57–244, the present case is one in which the taxpayer is separately obligated to each of the other two parties, who have no mutual obligations between themselves. Mere simultaneity of execution cannot make separate contracts an indivisible whole, regardless of the naked intention of one of the parties.

▬ The fact that plaintiff never actually received in hand the cash resulting from the exchange with Chennault is not critical. While the receipt of cash may require a conclusion that a particular transaction is a sale (see Carlton v. United States, supra), the failure to actually receive the cash does not automatically require a corollary finding that a transaction is an exchange. In the present case, Lawyers Title Insurance Company was clearly acting as a mere temporary depository of the surplus funds resulting from the Verbena-Wadley exchange. On receipt of them, it was to pay to the owners of the Gordon and Hollywood properties the amounts stipulated *if Halpern* approved the title he was to receive. If he did not accept the title within six months, then the money could be used for the purchase of

---

4. Note that in Haden the court restated the rule that a party (corresponding to Chennault here) could bind himself to exchange property he did not own but could acquire. But in Haden, the second par- ty had a valid contract to acquire the property in question, which is not the case as between Chennault and the other parties here, Smith-Kidd and Bartlett.

such other property as *Halpern* directed. But if Halpern after six months had called for the money to be paid to him in cash, it is difficult to see who would have had the standing to object. Certainly Halpern received a constructive right to receipt of the money when it was paid to Lawyers Title under these circumstances, and its failure to actually come to rest in his hands need not detain us.

■ Much of the decision in Carlton v. United States, supra, seems directly applicable to the present case. "The requirement is that the transaction be viewed in its entirety in order to determine its reality and substance, for it is the substance of the transaction which decides the incidence of taxation. [Citation omitted.] In the instant case, while elaborate plans were laid to exchange property, the substance of the transaction was that the appellants received cash for the deed * * * and not another parcel of land. * * * Further, General [read 'Chennault'] was never in a position to exchange properties with the appellants because it never acquired the legal title to either the Lyons [read 'Hollywood'] or the Fernandez [read 'Gordon'] property. * * * The money received from General by the appellants for the ranch [read 'Verbena'] property was not earmarked by General to be used in purchasing the Lyons or Fernandez properties. It was unrestricted and could be used by the appellants as they pleased. The fact that they did use it to pay for the Lyons and Fernandez properties does not alter the fact that their use of the money was unfettered and unrestrained. It is an unescapable fact that the money received by appellants from General was money paid to them for a conveyance of their land. As a result, the separate transaction between General and the appellants must be construed to be a sale, and the transactions between the appellants and Lyons and Fernandez as a purchase of other property. * * * Considering how close the appellants came to satisfy-

ing the requirements of that section [§ 1031] and the stipulation that an exchange was intended, this result is obviously harsh. But there is no equity in tax law." 385 F.2d 238 at 241–243.

Therefore, judgment is rendered for the defendant.